IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-01277-CMA-NYW

POPSOCKETS LLC,

    Plaintiff,

v.

ONLINE KING LLC, and
JOHN DOES 1-10 INDIVIDUALLY OR AS CORPORATE/BUSINESS ENTITIES,

    Defendants.

---

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(3) OR, ALTERNATIVELY, TO TRANSFER VENUE**

---

This matter is before the Court on Defendant Online King, LLC's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) or, alternatively, to Transfer Venue. (Doc. # 18.) The Motion is fully briefed. (Doc. ## 19, 27.) For the following reasons, Defendant's Motion is denied.

## I.    BACKGROUND

Plaintiff is a Colorado limited liability company with its principle place of business in Boulder, Colorado. (Doc. # 1 at ¶ 1.) Plaintiff "develops, manufactures, markets, and sells grips/stands, mounts, and other mobile-device accessories under the POPSOCKETS brand." (*Id.* at ¶ 7.) Plaintiff permits only Authorized Distributors, Authorized Retailers, and Authorized Resellers to sell PopSockets products. (*Id.* at ¶ 8.)

To promote and protect its brand, Plaintiff "registered numerous trademarks with the United States patent and Trademark Office[.]" (*Id.* at ¶ 9.)

Defendant is a New York limited liability company that has its principle place of business in Brooklyn, New York. (*Id.* at ¶ 2; Doc. # 18 at 2.) Defendant operates a storefront on www.amazon.com ("Amazon") called "Online King." (Doc. ## 1 at ¶ 2, 18 at 2.) Despite Plaintiff's allegation that Defendant is not an Authorized Distributor, Retailer, or Reseller of PopSocket products, Defendant allegedly sells products bearing Plaintiff's trademarks through Amazon. (Doc. # 1 at ¶¶ 5, 54, 105–114.) Defendant sold some of these products to Colorado customers. (*Id.* at ¶¶ 5, 114, 245, 268.)

Plaintiff alleges that Defendant interferes with PopSocket quality control procedures when Defendant sells its products without Plaintiff's authorization because Authorized Sellers must "abide by the quality-control requirements" and are subject to Plaintiff's auditing policies and procedures. (*Id.* at ¶¶ 55–103, 106–114.) Defendant purportedly does not "abide by PopSocket's quality control and customer-service requirements[.]" (*Id.* at ¶¶ 131–141.) Consumers who purchased products bearing Plaintiff's trademarks from Defendant have submitted numerous negative reviews on Amazon. (*Id.* at ¶¶ 33–54, 115–130.) Prior to filing suit, Plaintiff sent Defendant two cease and desist letters providing notice that Defendant's conduct infringed upon Plaintiff's trademark rights and harmed Plaintiff in Colorado. (*Id.* at ¶¶ 5, 160–61, 163.) Plaintiff alleges that following Defendant's receipt of these letters, Defendant's Amazon "storefront continued to advertise and sell products bearing the PopSockets Trademarks." (*Id.* at ¶ 161.)

On May 5, 2019, Plaintiff filed its Complaint alleging that Defendant's unauthorized sale of Plaintiff's trademarked products violates the Lanham Act and Colorado law in addition to supporting common law claims. (*Id.* at ¶¶ 184–251.) On July 15, 2019, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), Defendant moved to dismiss Plaintiff's complaint for lack of personal jurisdiction and improper venue, and alternatively, if dismissal is unwarranted, moved to transfer the instant action pursuant to 28 U.S.C. § 1404. (Doc. # 18.) Plaintiff responds that this Court has personal jurisdiction over Defendant, that venue is proper under 28 U.S.C. § 1391(b)(2), and that as a result, transfer for inconvenience is unwarranted. (Doc. # 19 at 4, 12.) Defendant replies that Plaintiff cannot meet its burden to establish minimum contacts in Colorado and that, without transfer, Defendant will suffer undue burden as to travel and discovery-related obligations. (Doc. # 27 at 2–4, 7.) For the reasons set forth below, the Court denies Defendant's Motion.

## II. <u>LEGAL STANDARDS</u>

### A. RULE 12(B)(2)

Rule 12(b)(2) provides that a party may move to dismiss a complaint for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Although a plaintiff bears the burden of establishing personal jurisdiction, a plaintiff need only make a *prima facie* showing that personal jurisdiction is proper. *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1070 (10th Cir. 2008); *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008). Courts accept as true all well-pleaded "plausible, non-conclusory, and non-speculative" factual allegations in a complaint. *Dudnikov*, 514 F.3d at 1070

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The *prima facie* showing may be made by submitting affidavits or other written materials with facts that would support jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Conflicting facts in the parties' affidavits "must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (internal quotation marks and citations omitted).

**B.	RULE 12(B)(3)**

Rule 12(b)(3) provides that a defendant may move to dismiss a complaint because of "improper venue." Fed. R. Civ. P. 12(b)(3). Once venue is challenged, it is the plaintiff's burden to show that venue is proper in the forum district. *See Gwynn v. TransCor Am., Inc.*, 26 F. Supp. 2d 1256, 1261 (D. Colo. 1998). "At the motion to dismiss stage, a plaintiff must present only a *prima facie* showing of venue." *Scott v. Buckner Co.*, 388 F. Supp. 3d 1320, 1324 (D. Colo. 2019). "[I]n reviewing a defendant's Rule 12(b)(3) motion to dismiss for improper venue, the Court may examine facts outside of the complaint and must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.* (internal quotations omitted). Courts must "accept the well-pleaded allegations of the complaint as true to the extent that they are uncontested by the defendant's affidavits." *Id.* (quoting *Karl W. Schmidt & Assocs., Inc. v. Action Envtl. Sols., LLC*, No. 14–cv–00907–RBJ, 2014 WL 6617095, at *2 (D. Colo. Nov. 21, 2014)). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient

notwithstanding the contrary presentation by the moving party." *Scott*, 388 F. Supp. 3d at 1324 (quotation marks and citations omitted).

## III. <u>ANALYSIS</u>

### A. **WHETHER THE COURT MAY EXERCISE PERSONAL JURISDICTION**

Whether personal jurisdiction exists depends on a two-step inquiry: (1) a court determines "whether any applicable statute authorizes the service of process" on a defendant; and (2) a court examines "whether the exercise of such statutory jurisdiction comports with constitutional due process demands." *Dudnikov*, 514 F.3d at 1070.

Because the Lanham Act does not provide for nationwide service of process, the Court must review the Colorado long-arm statute. *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1094 (D. Colo. 2014); *Dudnikov*, 514 F.3d at 1070; Fed. R. Civ. P. 4(k)(1)(A). Colorado's long-arm statute, in turn, confers the maximum jurisdiction permissible consistent with the Due Process Clause. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005); *Grynberg v. Ivanhoe Energy*, 666 F. Supp. 2d 1218, 1229 (D. Colo. 2009); Colo. Rev. Stat. § 13-1-124.

The United States Supreme Court has held that, to exercise jurisdiction in harmony with due process, a defendant must have "minimum contacts" with the forum state, such that having to defend a lawsuit there would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Jurisdiction over corporations may either be general or specific. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988). Jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum state is "specific

5

jurisdiction."[1] *Id.* The bulk of the parties' briefing focuses on specific personal jurisdiction. Thus, the Court first addresses specific jurisdiction because if such jurisdiction exists, analysis of general jurisdiction is unnecessary.

1. <u>Whether Defendant Has Minimum Contacts with Colorado</u>

To demonstrate specific personal jurisdiction that is consistent with due process, a plaintiff must satisfy two requirements. First, a plaintiff must show that a defendant purposefully directed its activities at residents of the forum. *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985). Second, the litigation must result from alleged injuries that "arise out of or relate to" those activities. *Id*; *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004).

As to the first prong, to establish purposeful direction, a plaintiff must demonstrate more than mere foreseeability of causing injury in another state. *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017). However, in cases involving internet-based sales, courts in the District of Colorado have held that "a defendant's use of a website to conduct business in the forum state, such as having a website that a customer in the forum state can access and on which the customer can purchase the alleged infringing product, provides a basis for a court's exercise of personal jurisdiction." *Otter Prods., LLC v. Phone Rehab*, LLC, 19-cv-00206-RM-MEH, 2019 WL 4736462, at *4 (D. Colo. Sept. 27, 2019) (collecting authorities);

---

[1] In contrast, when the suit does not arise from or relate to the defendant's contacts with the forum and jurisdiction is based on the defendant's presence or accumulated contacts with the forum, the court exercises "general jurisdiction." *Rambo*, 839 F.2d at 1418.

6

*Otter Prods., LLC v. Big Birds, LLC*, No. 19-cv-00626-DME-KLM, Doc. # 39 at 2–3 & n.2 (D. Colo. Aug 9, 2019); *see also Cornice Techs., Inc. v. Affinity Dental Prods.*, No. 04-cv-01133-EWN-OES, 2005 WL 1712124, at *5 (D. Colo. July 21, 2005).

In the instant case, Plaintiff sufficiently alleges that Defendant purposefully directed activity in Colorado by selling products bearing Plaintiff's trademarks to Colorado residents. Plaintiff asserts that Defendant sells a "high volume" of products that allegedly infringe upon Plaintiff's intellectual property. (Doc. # 1 at ¶ 105; Doc. # 19 at 1.) Defendant allegedly accomplishes these sales by utilizing its "highly interactive" Amazon storefront. (Doc. # 1 at ¶ 114.) Plaintiff further asserts that Defendant sells the infringing products to Colorado consumers throughout its regular course of business. (*Id.* at ¶¶ 5, 114, 245, 268.) To this point, Defendant does not dispute that it sold some PopSockets products to Colorado residents. (Doc. ## 18-1, at ¶ 6(c); 19 at 3.) Accepting Plaintiff's factual allegations as true, those allegations are sufficient "to make a prima facie showing that Defendant [has] purposely directed activity in Colorado, and that [Plaintiff's] claims arise from that activity." *Big Birds, LLC*, Case No. 19-cv-00626-DME-KLM, Doc. # 39 at 3 (citing *Four Winds Interactive LLC v. 22 Miles, Inc.*, No. 16-cv-00704-MSK-STV, 2017 WL 4334074, at *5 (D. Colo. Mar. 28, 2017) (holding that defendant's offers to sell to ten Colorado residents software that infringed plaintiff's copyright sufficed to create minimum contacts with Colorado); *Leach v. Pharmedoc Inc.*, No. CIV-16-1034-M, 2017 WL 943959, at *2 (W.D. Okla. Mar. 9, 2017) (holding sale of at least four patent-infringing pillows to Oklahoma residents sufficed to establish minimum contacts with that state)).

Yet, Defendant argues that "some of the alleged sales to Colorado were made by Plaintiff . . . [as] a tactic to support this lawsuit", and as such, Plaintiff improperly manufactured jurisdiction. (Doc. # 18-1 at ¶ 6(c).) However, even if Plaintiff made every single Colorado purchase from Defendant, Defendant "still voluntarily and knowingly made these sales to a Colorado resident, thus purposely directing their activity to Colorado" and such sales "cannot be said to be the result of [Plaintiff's] unilateral actions." *Big Birds, LLC*, Case No. 19-cv-00626-DME-KLM, Doc. # 39 at 3 (collecting authority). Therefore, Plaintiff's own purchase of alleged infringing products from Defendant does not divest this Court of personal jurisdiction over Defendant.

Furthermore, Defendant posits that Amazon's shipping role taints specific jurisdiction. (Doc. # 18 at 4.) The Court disagrees. That Amazon, and not Defendant, shipped the alleged infringing products to Colorado does not diminish the conclusion that Defendant directed its activities at Colorado when it agreed to sell the infringing products to Colorado. *Big Birds, LLC*, Case No. 19-cv-00626-DME-KLM, Doc. # 39 at 4 (citing *Leach v. Pharmedoc Inc.*, No. CIV-16-1034-M, 2017 WL 943959, at *2 (W.D. Okla. Mar. 9, 2017); *Telebrands Corp. v. Mopnado*, Civ. Action No. 2:14-07969 (JLL) (JAD), 2016 WL 368166, at *6–7 (D.N.J. Jan. 12, 2016)).

Regarding the second prong, whether Plaintiff's injuries arose out of Defendant's forum-related activities, courts examine whether there is a causal connection between a defendant's minimum contacts and the plaintiff's claims. *Dudnikov*, 514 F.3d at 1078. "Specific jurisdiction is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed

to consent to the exercise of jurisdiction for claims related to those contacts." *Id.* A defendant's receipt of a cease and desist letter can be sufficient to put a defendant on notice that the "brunt of the alleged injury would be felt by the plaintiff in the forum state" where the defendant continues to sell infringing products to the forum state after the receipt of such letter. *Tomelleri v. MEDL Mobile, Inc.*, 2:14-CV-02113-JAR, 2015 WL 1957801, at *6 (D. Kan. Apr. 29, 2015), *aff'd*, 657 F. Appx. 793 (10th Cir. 2016).

In the instant case, a causal connection incontrovertibly exists between Defendant's sale of alleged infringing products to Colorado residents and Plaintiff's trademark infringement claims. Furthermore, Plaintiff alleged that it sent Defendant at least two cease and desist letters providing notice to Defendant that its purported infringing sales caused harm to Plaintiff in Colorado, and that, rather than respond to the letters, Defendant "continued sale of non-genuine products[.]" (Doc. # 1 at ¶¶ 5, 160–61, 165.) Indeed, a portion of that harm encompasses confusion among Colorado consumers and damage to Plaintiff's reputation. *See Advisors Excel, LLC v. Senior Advisory Group, LLC*, No. 11-4015-JAR, 2011 WL 3489884, at *8 (D. Kan. Aug. 10, 2011) (concluding that plaintiff established a sufficient nexus between defendant's improper use of plaintiff's trademark and plaintiff's claims for injuries caused by customer confusion and damage to plaintiff's reputation). Accordingly, having satisfied both prongs, Plaintiff has established "minimum contacts."

2. <u>Whether Exercising Jurisdiction Would be Unreasonable</u>

Having determined that Plaintiff established Defendant has "minimum contacts" with Colorado, the Court next focuses on whether exercise of personal jurisdiction

would "offend traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1080 (quoting *Int'l Shoe*, 326 U.S. at 316). There are five factors to consider whether the defendant presents a "compelling case" that exercising jurisdiction would be unreasonable. *Pro Axess, Inc. v. Orlux Distribut., Inc.*, 428 F.3d 1270, 1279–80 (10th Cir. 2005). These factors include: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* However, "[w]hen minimum contacts have been established," the interests of a plaintiff and forum in exercising jurisdiction often justify "serious burdens placed on the alien defendant." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Ca., Solano Cty.*, 480 U.S. 102, 114 (1987).

Defendant fails to make a compelling showing. Defendant argues that exercising personal jurisdiction over Defendant is unreasonable because such exercise would "undoubtedly place a substantial financial and logistical burden" on Defendant (Doc. # 18 at 5), and that Plaintiff is readily capable of litigating elsewhere as evidenced by its litigation in multiple forums across the country. (Doc. # 27 at 3.) Even if litigating in Colorado causes some burden on Defendant, that burden does render the exercise of jurisdiction as unreasonable where Defendant "purposefully marketed [and sold] products bearing the infringing marks" toward Colorado. *RE/MAX, LLC v. Shenzhen Remax Co., Ltd.*, Case No. 1:15-cv-02496-REB-SKC, 2019 WL 1081039, at *5 (D. Colo. Jan. 18. 2019); *see also Big Birds, LLC*, Case No. 19-cv-00626-DME-KLM, Doc. # 39 at

4. Indeed, Defendant "should have reasonably anticipated that it would be subject to litigation" in Colorado when it continued to sell the alleged infringing products to Colorado. *RE/MAX, LLC*, 2019 WL 1081039, at *5.

Moreover, any burden or inconvenience for Defendant to litigate in Colorado is not undue, "especially in light of Colorado's interest in determining whether its businesses have been the victim of fraud and plaintiff's interest in receiving convenient relief in Colorado, its principal place of business." *TransFirst, LLC v. Brown*, 323 F.R.D. 641, 652 (D. Colo. 2018). The remaining factors similarly do not persuade this Court to adopt Defendant's position. Colorado's interest in protecting its companies and consumers, as well as Defendant's intentional sale of alleged infringing products to Colorado consumers, despite receipt of cease and desist letters, outweigh any burden on Defendant. Thus, exercising personal jurisdiction over Defendant is fair and reasonable and comports with due process.

Accordingly, Plaintiff has established that the Court has specific personal jurisdiction over Defendant.[2]

## B. WHETHER DISMISSAL BASED ON VENUE IS WARRANTED

### 1. Principles of Venue

The federal venue statute provides that a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

---

[2] Because Plaintiff has established specific personal jurisdiction, the Court need not address Defendant's arguments as to general jurisdiction. (Doc. # 18 at 6–7.)

> (2) **a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred**, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b) (emphasis added). Plaintiff asserts that venue is proper under § 1391(b)(2). (Doc. # 1 at ¶ 6.)

The Tenth Circuit conducts a two-part analysis when reviewing challenges to venue under Section 1391(b)(2). *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010). First, the Court "examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those claims." *Id.* Second, it "determine[s] whether substantial events material to those claims occurred in the forum district." *Id.* (internal quotations omitted). "The substantiality requirement is satisfied upon a showing of 'acts or omissions that have a close nexus' to the alleged claims.'" *Id.* (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003)); *see also DP Precise, LLC v. Phoenix Ins. Co.*, No. 12-cv-03001-REB-CBS, 2013 WL 2378561, at *2 (D. Colo. May 20, 2013) ("The forum activities must have been events significant to the plaintiff's claims."). However, "venue is not limited to the district with the most substantial events or omissions." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1165. Section 1391(b)(2) "contemplates that venue can be appropriate in more than one district . . . and permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts." *Id.* at 1166 (internal quotations omitted).

12

Moreover, "unless the balance is strongly in favor of the [defendant], the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). "Nevertheless, courts will 'accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'" *Sanchez v. Miller*, No. 15-cv-01615, 2016 WL 675816, at *3 (D. Colo. Feb. 19, 2016) (quoting *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168). Indeed, "determination of proper venue does not require the court to choose the best venue or determine which forum has the most, or most significant, contacts with plaintiff's claims." *Scott*, 388 F. Supp. 3d at 1324 (internal quotations omitted).

2. Application

The Court first analyzes the nature of the claims and the acts or omissions underlying those claims. Plaintiff asserts various federal and state law trademark infringement claims predicated upon Defendant's unauthorized sale and advertisement of "POPSOCKETS-brand products on the Internet, including defective, damaged, and poor-quality products bearing the POPSOCKETS trademark" to consumers, some of whom reside in Colorado. (Doc. # 1 at 1, ¶¶ 5, 105–14, 245, 268.) An instrumental function of trademark infringement and unfair competition laws involves protecting consumers from confusion and the harms of defective products. *See 1-800 Contracts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238–39 (10th Cir. 2013) (explaining that claims under §§ 43(a) and 32 of the Lanham Act require a party to prove that "the defendant's use [of a party's trademark] is likely to confuse consumers").

13

The Court next considers whether substantial "events material to those claims occurred" in Colorado. *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1166. The substantiality requirement is satisfied upon a showing of "acts and omissions that have a close nexus" to the alleged claims. *Id.* (citing *Jenkins Brick Co.*, 321 F.3d at 1372). "[I]n a trademark suit brought under the Lanham Act, a substantial part of the events giving rise to the claims occur in any district where consumers are likely to be confused by the accused goods, whether that occurs solely in one district or in many." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009) (collecting cases).[3]

In the instant action, Plaintiff alleges that Defendant sold at least a portion of infringing products to Colorado consumers. (Doc. # 1 at 1, ¶¶ 5, 105–14, 245, 268.) Plaintiff also asserts that "Defendant['s] unauthorized sale of products bearing the

---

[3] *See Golden Scorpio Corp. v. Steel Horse Bar & Grill,* 596 F. Supp. 2d 1282, 1286–87 (D. Ariz. 2009) (quoting *Cottman Transmission Sys. v. Martino,* 36 F.3d 291, 295 (3d Cir.1994), and citing *Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir. 1995) ("The place where the alleged passing off occurred ... provides an obvious correct venue"), and *Vanity Fair Mills v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir. 1956) ("[I]n cases involving trademark infringement and unfair competition, the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's")); *Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.,* No. C 05–0587 MHP, 2005 WL 701599, *4 (N.D. Cal. Mar. 23, 2005) ("[T]he fact that a substantial number of consumers of plaintiff's wine who reside in this district may be confused by defendant's use of the 'Mélange de Trois' mark is sufficient to establish th[at] this jurisdiction is a proper venue for the adjudication of plaintiff's claim"); *Sykes Lab., Inc. v. Kalvin,* 610 F. Supp. 849, 860 n. 8 (C.D. Cal. 1985) (observing that trademark infringement occurs in the district "where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's" (citation omitted)); *see also R. Griggs Group Ltd. v. Consol. Shoe, Inc.,* No. C98–4676 FMS, 1999 WL 226211, *4 (N.D. Cal. Apr. 9, 1999) ("Because there is evidence that both Griggs' shoes and defendants' shoes are sold in this district, this is one of the districts in which confusion is likely to occur").

POPSOCKETS Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendant[] believe they are purchasing genuine POPSOCKETS products, when, in fact, they are not." (Doc. # 1 at ¶ 146.) Defendant does not dispute that it sold **some** of these products bearing the POPSOCKETS trademark to Colorado residents. (Doc. ## 18-1, at ¶ 6(c); 19 at 3.) Accepting Plaintiff's factual allegations as true, it is clear that some of confused consumers are located in Colorado. Accordingly, because customer confusion is a substantial part of the events giving rise to Plaintiff's trademark and unfair competition claims, pursuant to 28 U.S.C. § 1391(b)(2), venue in the District of Colorado is proper.

C. **WHETHER TRANSFER BASED ON INCONVENIENCE IS APPROPRIATE**

1. Relevant Law

Under 28 U.S.C. § 1404(a), a district court may "transfer any civil action to any other district where it might have been brought" for the "convenience of the parties and witnesses, in the interest of justice." The Supreme Court has explained that § 1404(a) gives "discretion [to] the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (citations omitted). In considering a motion to transfer under § 1404(a), courts weigh the following discretionary factors:

> [T]he plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure

15

> attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Emp'rs Mut. Cas. Co.*, 618 F.3d at 1167 (internal quotations omitted). "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." *Scheidt*, 956 F.2d at 966. "[U]nless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1167 (quoting *Scheidt*, 956 F.2d at 965).

    2.    <u>Application</u>

Defendant fails to demonstrate that transfer of venue is warranted. First, the Court flatly rejects Defendant's contention that Plaintiff's choice of forum is entitled to no deference. (Doc. # 18 at 9.) As discussed above, the facts giving rise to the laws and the nature of Plaintiff's claims have a material relationship to Plaintiff's chosen forum— Colorado. *Emps. Mut. Cas. Co.*, 618 F.3d at 1168. Thus, Plaintiff's choice of forum weighs against transfer.

Next, convenience of witnesses "is the most important factor in deciding a motion under § 1404(a)." *Id.* at 1169 (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)). To demonstrate that witness accessibility weighs in favor of transfer, "the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of the[ir] testimony; and (3) show[ ] that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony

16

would be unsatisfactory[,] or that the use of compulsory process would be necessary." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169 (quoting *Scheidt*, 956 F.2d at 966) (quotation marks and citation omitted); *see also* 15 Charles Alan Wright et. al., Federal Practice & Procedure § 3851, 227–28 (4th ed. 2019) ("If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, . . . the application for transferring the case should be denied . . . ."); *Headrick v. Atchison, Topeka & Santa Fe Ry. Co.*, 182 F.2d 305, 310 (10th Cir. 1950) (holding that the plaintiff's choice of forum should not be disturbed when there is no showing as to the number of witnesses, who they are or where they live, or what the additional expense would be to try the case in the forum selected by the plaintiff).

In this case, Defendant has failed to establish that the convenience of witnesses justifies transfer. Besides naming one manager who resides in the State of New York, Defendant identifies only two other potential trial witnesses, its distributor and an Amazon representative, who are not located in Colorado. (Doc. # 18 at 10.) Although Defendant claims that its distributor "will not be willing to attend trial and that the use of the compulsory legal process will be necessary," Defendant fails to explain why. (*Id.*; Doc. # 27 at 8.) Nor does Defendant even attempt to explain why trial preservation depositions will be insufficient for use at trial or unsatisfactory. (Doc. # 18 at 10.) Additionally, Plaintiff argues that its personnel, who are located in Colorado, are key witnesses in this litigation. (Doc. ## 19 at 14; 19-2 at ¶¶ 1, 3.) Plaintiff also asserts that documents relevant to this action "are primarily maintained at PopSocket's headquarters in Boulder, Colorado." (Doc. # 19 at 14.) As such, it appears that whether

17

this case is litigated in Colorado or New York, each party will be inconvenienced to a certain extent. However, bare assertions that some witnesses will refuse to testify at trial and the absence of allegations showing that use of depositions will be unsatisfactory cannot justify discarding Plaintiff's choice of venue.

Finally, conflicts of law and application of local law do not warrant transfer. Defendant asserts that this case concerns "questions over the interpretation of a local [New York] statute[,]" and as such, a New York court "would be best suited" in answering those questions. (Doc. # 18 at 11.) However, the same can be said of Colorado as Plaintiff has asserted a Colorado state law claim for deceptive trade practices under Colo. Rev. Stat. § 6-1-105. (Doc. # 1 at ¶¶ 286–309.) Moreover, this Court is capable and qualified to apply New York law in this case if necessary. *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169–70. Indeed, "[t]his factor receives less weight when the case involves 'relative[ly]' simpl[e]' legal issues." *Id.* at 1169 (quoting *Scheidt*, 956 F.2d at 966 ("applicability of Florida law is not a significant concern in light of the relative simplicity of the legal issues involved . . . .")). This case presents a relatively simple dispute as to trademark infringement claims arising out of federal and state law.

Accordingly, none of the above-mentioned factors convince this Court that transfer is necessitated.

## IV. CONCLUSION

Based on the forgoing analysis, Defendant Online King, LLC's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) or, alternatively, to Transfer Venue (Doc. # 18) is DENIED.

DATED: December 23, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge